JONES, PLAINTIFF AND APPELLEE, *v.* CANEJA ET AL.,
DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of San Juan, Section 1, in an Action of Debt.

No. 1909.—Decided March 24, 1919.

DEBT—SPANISH MONEY—LEGAL TENDER.—A debt contracted in Spanish money should be paid in that money, but when this is not possible it should be paid in the silver or gold legal tender of this Island.

ESTOPPEL.—The defendant cannot plead in his favor and against the plaintiff the doctrine of estoppel based on certain acts of the plaintiff when it is shown that the said acts were prompted by the person from whom the defendant took title.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for the appellants.

*Messrs. Antonio J. Amadeo* and *Eduardo Acuña* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

William A. Jones, Bishop of the Roman Catholic Apostolic Church of Porto Rico, filed a complaint against Marcos T. Caneja and others for the sum of $639.45. The claim is based on the following facts: By a public deed executed in 1880 Manuel Díaz Caneja acknowledged an annuity of $2,842.11, Spanish money, in favor of the "Hospital de la Concepción" with interest at five per cent. per annum, secured by a mortgage on a property of eight hundred acres which is properly described, binding himself to pay the same

without any discount for taxes, exchange or other cause. Manuel Díaz Caneja sold the said property to Eduardo González Caneja, who in turn sold four hundred acres to Marcos T. Caneja, one hundred acres to Juan Martinó and one hundred and six acres to the Graham & Granger Fruit Co., the annuity in the said terms being acknowledged in all these conveyances. Since the year 1900, without the consent of the plaintiff, the interest of the annuity was paid on a principal of $1,705.20 instead of $2,842.11 Spanish money, or $2,557.80 gold, Spanish money being at a discount of ten per cent.

In their answer the defendants admitted the creation of the annuity, but alleged that it was for three thousand Mexican *pesos* with interest at five per cent per annum payable in the same money. Then they set up three new defenses. In the first they maintain, in brief, that by reason of the change from provincial money to American money the principal of the annuity was reduced to $1,705.26, and that with this principal for a basis they have paid the interest on the annuity. In the second they allege that inasmuch as the directorate of the hospital had been accepting the interest with the consent and approbation of the former bishops of Porto Rico, the present bishop is estopped from bringing this action. In the third they assert that if they owe the sums claimed, an action for the interest for the years 1900 to 1911 is barred by limitation, in accordance with the provisions of subdivision 3 of section 1867 of the Civil Code.

The issue being thus joined, the case was brought to trial and both parties offered evidence, the district court finally entering judgment sustaining the claim of the plaintiff from the year 1911. From that judgment the defendants took this appeal.

There are two fundamental questions to be considered and decided in this case, to wit: The kind of money in which the annuity was created and in which the interest was agreed to be paid, and the question of estoppel.

The transfer of the original annuity for four thousand *pesos* on house No. 8 O'Donnell Street, San Juan, to the rural property of eight hundred acres referred to in the complaint, was authorized by the vicar-general, as appears from the public instrument executed for that purpose and later recorded in the registry of property, in which it was permitted that the annuity be reduced to three thousand *pesos,* current money, "equivalent to two thousand, eight hundred and forty-two *pesos,* eleven cents, Spanish money, on the rural property mentioned in paragraph 1, executing the necessary deed binding himself to pay to the director of the 'Hospital de Caridad' interest at five per cent per annum, or one hundred and fifty dollars annually, current money, without discount of any kind, whether for taxes, change of money or otherwise." The deed, as appears from the statement of the case, is dated December 2, 1889.

Threfore, the contract was for the sum of *three thousand pesos in current money,* but specified its equivalent in Spanish money, it being specifically agreed that the interest should be paid "without discount of any kind, either for taxes, *change of money* or otherwise." This being so, the change brought about in this Island by reason of the adoption of the provincial money and the exchange of said money for American money did not fundamentally affect the contract. It will only be necessary to take into account the official currency at the present time for the purpose of determining, in its case, its relation to the currency agreed to, when payment is to be made.

According to section 1138 of the Revised Civil Code, "payment of debts of money shall be made in the specie stipulated and, should it not be possible to deliver the specie, in legal silver or gold coin current in Porto Rico." Except for the substitution of the word "Spain" for the words "Porto Rico" that section is the same as section 1170 of the old Civil Code.

What kind of money was agreed upon in this case? The

trial court holds that it was Spanish money and the appellant admits "that the two thousand, eight hundred and forty-two *pesos* and eleven cents, equivalent, according to the deed of December 2, 1889, to three thousand Mexican *pesos,* were Spanish currency," but argues: "Yes, but it was the *special provincial* money adopted for the Island of Porto Rico by the Decree of Exchange issued by the Spanish Government on December 7, 1895."

As may be seen from the language of the appellant, the provincial money was adopted some years after the execution of the contract and the contract specifically set forth that there should be no discount by reason of the change of money, and what the appellant contends for in this case is really a discount.

Besides, this question relative to the effect of the change of money in 1895 has been considered and decided by this court in the case of *Convent of the Reverend Carmelite Nuns* v. *Silva,* 13 P. R. R. 144, as follows:

"Even when the circulation of North American, French and Mexican money was authorized in Porto Rico and a legal value was placed upon such money in relation to the official money of the country, they were never considered official money, such only being the *fuerte* money of Spanish coinage the circulation of which was authorized by Royal Decree of 1857 until the year 1895, when the Mexican money was substituted by the special money created for Porto Rico and the value of which was not the same as that of the Spanish money. The exchange of money provided by section 11 of the Organic Act refers only to the special money in Porto Rico and does not include Spanish money properly speaking, or any other foreign money which must be regarded as merchandise, the value of which is subject to the fluctuations of the market.—The payment of obligations constituted in Spanish money must be made in the same money or in American money, not at the rate of exchange established in the Organic Act of Porto Rico, but at the current rate of exchange."

Taking in consideration, then, the terms of the contract and the law and jurisprudence on the matter, the trial court

did not commit the error assigned in holding that payment should be made in the money contracted for—Spanish money or its equivalent in the present currency of Porto Rico.

Let us examine the question of estoppel. At the trial Rev. Luis Rodríguez, Secretary of the Bureau of Accounts of the Bishopric, testified on behalf of the plaintiff and, among other things, said that in examining the books of the bureau he noticed "that there had been an incorrect payment and the Mother Superior of the hospital was collecting less than she should collect; that witness called her attention thereto * * * and that was the origin of this suit * * *. That the error which the witness found was due to a reduction made in the payment of the interest; that less interest was paid than should have been paid and, consequently, the reason why they paid less interest was because they believed that the principal had been reduced forty per cent; that they believed there was a reduction of the principal, and that witness knows of said reduction because he has examined the books; that the reduction appears to have been made by Father Caneja in the handwriting of Father Caneja and of the Mother Superior by direction of Father Caneja, who is an uncle of the witness; that as to whether he knows the reasons Father Caneja had for doing this, witness can only submit the fact; that the reduction is not dated in the books."

Lucía Elorz, the Mother Superior of the hospital in whose favor the annuity was created, called by the defendant, testified, among other things, in answer to questions of the attorney for the said party, as follows: "That as appears from the book of annuities in favor of the hospital, examined by witness while testifying, there appears at folio 225 the amount of four thousand *pesos* reduced to two thousand, eight hundred and forty-two *pesos* and eleven cents, provincial money which at a discount of forty per cent, was reduced to one thousand, seven hundred and five dollars and twenty cents, the interest thereon amounting to eighty-five dollars and twenty-six cents." To questions of the attorney for the

plaintiff she testified as follows: "That there are two notes in the book; that witness does not know who made the first one; that the second one was made by the witness; that she did not enter the date; that she can only remember that this was at the time this controversy arose; that witness made that note because she was asked by the Bishopric to render a statement of the principal owing by Caneja and the witness made a mistake and entered, she thinks, one thousand, six hundred and sixty-seven dollars. That the last note appearing in the books was made by the witness after asking Father Caneja for an explanation of the principal that he had belonging to the hospital, who mentioned the sum of 1,705 dollars and 20 cents, and gave her the following note which witness copied in her own handwriting: 'NOTE: The principal was originally two thousand, eight hundred forty-two, eleven, provincial money, which after the forty per cent discount was reduced to one thousand, seven hundred and five dollars and twenty cents. Annual interest, eighty-five, twenty-six.' That the witness copied this note given to her by Father Caneja in the book in order to make the receipts more clearly and to know whether he had to pay more or less. That the witness asked Father Caneja because he was the person who had the principal and she wanted to ask him personally. That the witness saw the first note in the book when she came there; that the witness believes that it is in the handwriting of Father Caneja; that she cannot positively state so."

It is well to note, besides, that although there are several defendants in this case, only defendant Marcos Tomás Caneja had been paying the interest on the annuity since 1908, as appears from a letter written by him to the Mother Superior of the hospital on December 22, 1915.

These being the facts of the case, we think that the defendant is not in a position to invoke the doctrine of estoppel in his favor.

The appeal should be dismissed and the judgment appealed from

*Affirmed.*

Justices Wolf, Aldrey and Hutchison concurred.

Mr. Chief Justice Hernández took no part in the decision of this case.